# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**JERRY L. HOFFMAN, JR.,**

      **Plaintiff,**

**vs.**                            **Case No. 1:23cv60-MW-MAF**

**NICHOLAS T. DOMICO,**

      **Defendant.**

_____/

## THIRD REPORT AND RECOMMENDATION[1]

This is a pro se civil rights action challenging an interaction between Plaintiff Jerry Hoffman, Jr., and a Gainesville Police Officer, Defendant Domico. Plaintiff filed a third amended complaint, ECF No. 28, and Defendant filed an answer, ECF No. 34. After a period of discovery, ECF No. 35, Defendant Domico filed a motion for summary judgment, ECF No. 59, supported by separately filed exhibits, ECF Nos. 58 and 61. Plaintiff

---

[1] The first Report and Recommendation, ECF No. 20, concerned Defendant's motion to dismiss, ECF No. 14; the recommendation was adopted and the motion was granted in part and denied in part. ECF No. 22. The Second Report and Recommendation, ECF No. 52, recommended granting Defendant's motion to dismiss the official capacity claim as presented in an amended complaint, ECF No. 28. That recommendation was also adopted, ECF No. 53, without objection.

filed a timely response in opposition to that motion.  ECF No. 67.  Plaintiff

also filed his own amended motion for summary judgment, ECF No. 63,

supported by separately filed exhibits, ECF No. 64.  Defendant filed

opposition to that motion, ECF No. 68, and also filed a reply, ECF No. 71,[2]

to Plaintiff's response, ECF No. 67.   The summary judgment motions are

ready for a ruling.

## I.    Preliminary Issues

In general, this case concerns Plaintiff's attempt to video record

interactions with officials at the Social Security Office in Gainesville,

Florida.  ECF No. 28.  A security guard asked Plaintiff to stop recording and

"step outside," but Plaintiff refused and called the Gainesville Police

Department [GPD] for assistance.  *Id.* at 5.  Defendant Domico responded

and, ultimately, issued Plaintiff a trespass warning.[3]  *Id.*  Plaintiff asserts a

Fifth Amendment due process claim against the Defendant, as well as a

Fourteenth Amendment equal protection claim.  *Id.* at 8.  He seeks punitive

damages and injunctive relief.  *Id.*

---

[2] Defendant subsequently corrected one of the exhibits submitted with the reply. ECF Nos. 72-73.

[3] Plaintiff alleged that Defendant Domico issued him an "unlawful trespass" "without a lawful reason." ECF No. 28 at 5-6.

Both parties have submitted video evidence in support of their respective summary judgment motions.  ECF Nos. 61 and 63.  That evidence has been reviewed along with the other exhibits.[4]

"Generally, when ruling on a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party."  Turner v. Phillips, 547 F. Supp. 3d 1188, 1200 (N.D. Fla. 2021), *aff'd*, No. 21-12370, 2022 WL 458238 (11th Cir. Feb. 15, 2022) (citing to Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009)).  "However, in cases where video evidence is available, the Court views the facts in accordance with that video evidence, so long as 'there are no allegations or indications that video evidence has been doctored, or that the video shows something different [from] what actually happened.'"  Varnadore v. Merritt, 778 F. App'x 808, 812 (11th Cir. 2019) (quoted in Turner, 547 F. Supp. 3d at 1200).  Further, under Eleventh Circuit precedent, the Court must "accept

---

[4] Plaintiff's Exhibit 3 is video from a camera mounted in the lobby of the Social Security Office.  ECF No. 64-3.  However, Plaintiff altered that video by adding captions.  *Id.*  Defendant provided an unaltered copy of that video; it does not appear that Plaintiff's video altered the events as they unfolded.  ECF Nos. 58-3 (ECF No. 61).  Both parties submitted copies of Plaintiff's video, ECF No. 64-1 and ECF No. 58-1, as well as Defendant's "body cam" video, ECF No. 64-6 and ECF No. 58-5.

the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011); *see also* Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing to Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

## II. Legal standards governing a motion for summary judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof" and determine if "there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[5] the Court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

---

[5] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

insufficient.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial."  Sconiers v. Lockhart, 946 F.3d 1256, 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)).  Specific facts pled in a sworn complaint and supported by record evidence must be credited to the Plaintiff, and all reasonable inferences must be resolved in the light most favorable to the nonmoving party. Sconiers, 946 F.3d at 1262-63.  However, "when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible."  946 F.3d at 1263.  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).

"Cross motions for summary judgment do not change the standard."

Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic &

Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire

Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297

(M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated

separately; the denial of one does not require the grant of another.'"

Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d

1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608

F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, 541 F. Supp.

2d at 1297-98)).  Thus, each motion for summary judgment has been

separately evaluated.

## III.    The Undisputed Relevant Rule 56 Evidence

On April 15, 2022, Plaintiff walked into the Social Security office while

filming a video on his cellphone.  ECF No. 58-1.  He begins the video with

his own narration, saying, "We are going to go into the welfare office . . .

and see if these fine folks . . . are gonna let us . . .uh, violate our First

Amendment right."  *Id.*  He also says, "let's see how long it takes before

they call the cops and throw me in jail for this.  I've been here before and

they don't really have any use for cameras or anything like that."  *Id.*

As Plaintiff walks into the office, James MacLean, the security officer asks, "How can I help you?"  *Id.*; *see also* ECF No. 58-2 at 1.  Plaintiff answered, "I just came to fill out some paperwork,"[6] and Mr. MacLean asked if Plaintiff was recording.  ECF No. 58-1.  Plaintiff said, "Absolutely.  I'm interacting with my government . . . in a publicly accessible area."  *Id.*  As Mr. MacLean tells Plaintiff "it's posted, you cannot film in here," Plaintiff cuts him off and says, "I understand it's posted, but . . . ."  *Id.*  Mr. MacLean walks to the lobby area and points to several places where signs were presumably posted, saying "no video."[7]  *Id.*  He repeatedly tells Plaintiff "it's posted" and tells Plaintiff he needs to exit the building.  *Id.*  Plaintiff says he understands it is posted, but asserts that "Smith v. Cummings is a Supreme Court ruling that allows us to film our government."  *Id.*  When

---

[6] Plaintiff does not enter the facility with any paperwork in his hand.

[7] Mr. MacLean's gestures suggest he is pointing to signs, but the signs are not visible in the video evidence.  However, Mr. MacLean stated in his declaration that he showed Plaintiff "where it was posted that videography is prohibited in the Social Security office, as well as a laminated copy of the prohibition with reference to 41 CFR 104-74.420," which was attached to the declaration.  ECF No. 58-2 at 2, 4.  The attachment states in large print, "Photography and Videography Prohibited," twice.  ECF No. 58-2 at 4.  In smaller type, the sign states: "Federal law and SSA policy prohibits taking pictures or video inside SSA offices without the expressed written consent of an authorized official of the agency."  *Id.*

Mr. MacLean tells Plaintiff he cannot film inside the Social Security Office,

Plaintiff asks him to "call someone who knows different." *Id.*

Mr. MacLean asks Plaintiff several more times to "step outside" and

clearly says, "I'm requesting you to leave." *Id.* Plaintiff refuses, while

saying, "You are violating my First Amendment right." *Id.* Mr. MacLean

says "you need to leave" multiple times, while standing very close to the

Plaintiff. *Id.*; *see also* ECF No. 58-4 at 2; ECF No. 58-3. As Mr. MacLean

begins to reach for Plaintiff, Plaintiff reacts by pushing Mr. MacLean's arm

and saying, "please do not touch me." ECF No. 58-1. Mr. MacLean then

opens the door and again attempts to direct Plaintiff out of the building with

a slight push. *Id.* Plaintiff briefly goes backward into the door and then,

contrary to Newton's "first law of motion,"[8] flops forward onto the ground as

if propelled by an invisible force. ECF No. 58-3. Plaintiff hollers out as if in

---

[8] Newton's first law of motion, also known as the Law of Inertia, states that objects will remain in their current state of motion unless acted upon by an unbalanced force. Thus, when allegedly propelled toward the door by Mr. MacLean, Plaintiff should have remained on that path but for his interaction with some force coming from the opposite direction. If such opposing force existed, its source is not apparent from the recordings.

pain, and Mr. MacLean can be heard on the video saying, "What a fake."[9] ECF No. 58-1.

When Mr. MacLean attempts to take Plaintiff's tripod and camera, Plaintiff grabs the tripod back and then hops onto his knees before standing up.  ECF No. 58-3.  The video shows the supervisor, Ms. Louder, coming to speak with Plaintiff.[10]  *Id.*  After a few moments of conversation, she obtains a face mask for Plaintiff, but he does not put it on.  *Id.*  The video shows Plaintiff, Mr. MacLean, and Ms. Louder apparently speaking for approximately two minutes at the front desk before Plaintiff ultimately leaves the building.  *Id.*  The entire encounter takes less than five minutes.

"Initially, management at the facility" called the Gainesville Police Department ["GPD"] to report "a disturbance," but cancelled the request for assistance after Plaintiff left.  ECF No. 58-4 at 2.  Plaintiff then went to the front desk of the GPD, "requested LEO, and waited to be interviewed."  *Id.* In response, Defendant Domico went to the Social Security office and spoke with Mr. MacLean, who relayed the events to Defendant Domico.

---

[9] The maneuver is reminiscent of a LeBron James "flop" - a move which attempts to sell a nonexistent foul - which is similar to a soccer player taking a "dive" and faking an injury before miraculously recovering to take the resulting penalty kick.

[10] The video from the Social Security Office does not have audio.  ECF No. 58-3.

ECF No. 58-5.  Defendant Domico watched a video of the incident on a

monitor with Mr. MacLean, taking several photographs in the process.  *Id.*

Defendant Domico specifically asked Mr. MacLean if Plaintiff came there

"for business," and Mr. MacLean responded, "He said he did, but the only

thing he gave us was that his name was Jerry Hoffman, and that was it."

Mr. MacLean provided Defendant Domico with a copy of the rule

prohibiting video recording inside the facility, but advised that it was

permissible to take "informational pictures" of signs or "stuff on the bulletin

board."  ECF No. 58-5.  Mr. MacLean stressed that videos were not

permitted because there was "too much personal information that could be

given out."  *Id.*  Defendant Domico can be seen in the video reviewing the

"Rules and Regulations Governing Conduct on Federal Property."  *Id.*

Because it did not appear that Plaintiff went to the facility for Social

Security services but, instead, to exercise his First Amendment rights,

Defendant Domico told Mr. MacLean that he was going to issue Plaintiff a

trespass warning.  ECF No. 58-5.  Mr. MacLean agreed with that "proposed

course of action."  ECF No. 58-2 at 2.  Mr. MacLean told Officer Domico

that "the only way" Plaintiff would be able to do Social Security business

was if he called and requested "an appointment."  ECF No. 58-5.

Case No. 1:23cv60-MW-MAF

Defendant Domico went outside and reviewed the policy concerning photographs in a federal facility on the laptop in his patrol vehicle.  *Id.*  He also entered notes in his report.  *Id.*  After reviewing the policy, he returned inside to speak with Ms. Kay Louder, the building manager, before leaving. *Id.*  Defendant Domico wanted to confirm that Ms. Louder was in agreement with the decision to trespass the Plaintiff.  *Id.*

Defendant Domico advised her that Plaintiff was at the police station giving his "side of the story," and he was going to go interview him, but said he planned to trespass Plaintiff because he came to be disruptive and not for services.  *Id.*  Ms. Louder said they called 911, but because "they asked so many questions . . . by the time they got through the questions, he had already left."  *Id.*  Defendant Domico advised that they tried "to get someone freed up" to head over there, but then the call was cancelled.  *Id.* Defendant Domico said again that he was going to hear Plaintiff's "side of the story," and if there was nothing else he was not aware of, then most likely, he was going to trespass Plaintiff.  *Id.*  He further advised that there would not be any type of a "battery report."  *Id.*  Ms. Louder said "he just refused to do anything," and mentioned that Plaintiff did not want to wear a

mask.  *Id.*  Before he left, Defendant Domico confirmed that Ms. Louder

was in agreement with issuing the trespass.  *Id.*

Defendant Domico then made contact with Plaintiff at the GPD.  ECF

No. 58-4.  Plaintiff showed him the video he took using his cell phone and

narrating as he walked into the building.  *Id.*  Defendant Domico took

photographs of the Plaintiff, but did "not observe any marks or injuries."  *Id.*

He also told Plaintiff that the surveillance video from the Social Security

office "showed that he fell to the ground on his accord."  *Id.*  Defendant

Domico told Plaintiff he "should not have pushed away from the [security]

officer in an aggressive manner."  *Id.*  Defendant Domico printed "US Code

41 CFR 102-74.420 and gave it to" Plaintiff.  *Id.*

The final video submitted shows an excerpt of Defendant Domico's

meeting with Plaintiff at the station.  ECF No. 58-6.  He told Plaintiff that the

wishes of the Social Security office property manager were to not deny

Plaintiff any services, but that Plaintiff would be trespassed because of

disruptive behavior.  *Id.*  Defendant Domico told Plaintiff that if he wanted

services at the facility, he needed to call the 800 number first and schedule

an appointment for services.  *Id.*  Plaintiff responded by stating that he "was

there for services, and they denied them."  *Id.*  Plaintiff said he told the

security guard he was there "to fill out some paperwork." *Id.* Defendant
Domico asked Plaintiff if he had any paperwork for services, but Plaintiff
said "they have all the paperwork." *Id.*

Defendant Domico's investigation report stated his conclusion that
Plaintiff's intentions "were solely to create an altercation between an
authority figure on federal property" as Plaintiff arrived on the property and
immediately began recording. ECF No. 58-4 at 3. The Defendant found
that Plaintiff did not "display intentions of applying for social security
services."[11] *Id.* Defendant said in the report that he could not determine
that any crimes occurred such as a battery. *Id.*

Plaintiff submitted a copy of the Department of Homeland Security's
"Operational Readiness Order." ECF No. 64 at 11 (Ex. 4). It states that
photographs of the exterior of a federal facility are permitted, but only
"building entrances, lobbies, foyers, corridors and auditoriums from publicly
accessible areas" could be photographed. ECF No. 64 at 13. However,
other photography of the interior is only permissible "with the permission of
the occupying agency." *Id.* at 12. The Readiness Order specifically states
that photographs and "videotaping the interior of federal facilities is allowed

---

[11] Plaintiff was 59 years of age at the time of the incident. ECF No. 58-4 at 4.

under" limited conditions as stated in the Code of Federal Regulations,
"unless there are regulations, rules, orders, directives or a court order that
prohibit it."  *Id.* at 12.  One example provided is that "SSA has rules that
prohibit photography and videotaping in its spaces."  *Id.*  "Similarly many
courts issue no photography or videotaping in courtrooms and surrounding
areas."  *Id.* at 13.

On April 18, 2022, Plaintiff received a certified letter from the Social
Security Administration.  ECF No. 64 at 18 (Ex. 7).  It advised that Plaintiff's
"actions violated our regulations" which "prohibit threatening or disorderly
conduct on Federal property or directed at our personnel."  *Id.*  The letter
more specifically stated that Plaintiff "entered the Gainesville Social
Security office while recording a video" and then "became disruptive when
the Physical Security Officer directed you to cease recording your video in
the office."  *Id.*  The letter noted that Plaintiff "refused to follow directives
and continued to" record his video after being directed to stop.  *Id.*  He also
refused to comply with "the requirement to wear a face mask in the office."
*Id.*  Furthermore, Plaintiff refused to leave the facility.  *Id.*  Plaintiff was
informed that he was allowed to enter one of SSA's "offices only if" he was
sent a "certified letter with the specific date and time of an appointment."

*Id.* The letter provided Plaintiff with information as to the three remaining options for contacting the SSA.[12]  *Id.* at 19.  Finally, Plaintiff was informed that if he disagreed with the decision to restrict him from entering Social Security offices, he could file "an appeal within 60 days of the date of [that] letter."  *Id.*  Additionally, Plaintiff could "request a review of [the] decision every three years," beginning on April 17, 2025.  *Id.*

The evidence shows that Plaintiff submitted a request for an appeal on July 14, 2022, which was "after the 60-day time limit."  ECF No. 58-9 at 1.  The Social Security Administration noted that Plaintiff submitted evidence to explain why his appeal was late, but found Plaintiff had not shown good cause for filing a late appeal.  *Id.*

Plaintiff acknowledged that he had "not endeavored to obtain Social Security benefits or services since April 15, 2022."  ECF No. 58-7 at 2.  He also admitted that he could not be denied Social Security services or benefits, and that he is permitted to call the Social Security office if he needs to schedule an appointment.  *Id.* at 3.  However, Plaintiff maintained

---

[12] The options included online, in writing, or on the telephone.  ECF No. 64 at 19.

that he went to the Social Security office "to obtain more benefits[13] and had planned to video record [his] interactions with [the] government."  *Id.*

Mr. MacLean provided a declaration which clarifies that upon entering the Social Security facility, there is an "interior room" which "contains chairs for patrons to sit and wait for service."  ECF No. 58-2 at 2.  There is an electronic check-in kiosk which is also visible in the video evidence.  *Id.*; *see also* ECF No. 58-5.  A clear glass window partition separates the waiting area from a number of "service window stations" which are off a hallway which spans the length of the glass partition.  ECF No. 58-5.[14] "Patrons use the service windows to be assisted by Social Security Administration employees."  ECF No. 58-2 at 2.

## IV.    Analysis

Before analyzing the claims raised in this case, it is important to note what is not part of this case.  Plaintiff has not sued the security officer,

---

[13] Plaintiff has not explained or presented evidence of the benefits he was seeking, or of any benefits already received.

[14] The video evidence shows that the service stations are visible from the waiting area.  ECF No. 58-1.  Persons enter the building through two glass doors, which open into a small foyer, and then two additional glass doors open into the large waiting area. *Id.*  There is a front desk just to the right of the entrance, and several times during the Defendant's interview with Mr. MacLean, persons were directed to a kiosk to the left of the entrance into the open waiting area.  ECF No. 58-5.

Mr. MacLean.  Plaintiff has also not sued Defendant Domico for violating

his First Amendment rights.  Indeed, Plaintiff acknowledged that Defendant

Domico "never prevented" Plaintiff from videotaping his "interactions with

public officials."  ECF No. 58-7 at 4-5.  This is also not a case challenging

the denial of Social Security benefits without due process.  *See* Mathews v.

Eldridge, 424 U.S. 319, 332, 96 S. Ct. 893, 901, 47 L. Ed. 2d 18 (1976).[15]

## A.    Due Process Claim

Plaintiff raised a "Fifth Amendment" due process claim[16] against

Defendant Domico, claiming he denied "Plaintiff's liberty interest without

due process."  ECF No. 28.  Defendant Domico is a "state actor," not a

federal official.  Thus, the Court notes that Plaintiff's claim is insufficient on

its face "because the Fifth Amendment governs the conduct of federal

actors, not state actors."  Elliott v. Benoit, No. 321CV00290BJDMCR, 2021

WL 1060181, at *2 (M.D. Fla. Mar. 19, 2021) (citing Buxton v. City of Plant

---

[15] The undisputed evidence demonstrates Plaintiff did not seek to obtain Social
Security benefits or services after the April 15, 2022, incident.  More importantly,
Plaintiff admitted that he could call the Social Security office if he needed an
appointment.  Indeed, Plaintiff's stated intent when entering the SSA building was to
interact with staff and "see how long it takes before they call the cops and throw me in
jail for this."  ECF No. 58-1.

[16] The Fifth Amendment provides, *inter alia*, that no person shall "be deprived of
life, liberty, or property, without due process of law."  U.S. CONST. amend. V.

City, Fla., 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law.").

The first eight Amendments of the Constitution "originally applied only to the Federal Government." Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 237, 142 S. Ct. 2228, 2246, 213 L. Ed. 2d 545 (2022) (citing to Barron ex rel. Tiernan v. Mayor of Baltimore, 7 Pet. 243, 247–251, 8 L.Ed. 672 (1833). Subsequently, the Supreme Court "held that the Due Process Clause of the Fourteenth Amendment 'incorporates' the great majority of those rights and thus makes them equally applicable to the States." Dobbs, 597 U.S. at 237, 142 S. Ct. at 2246; *see also* Albright v. Oliver, 510 U.S. 266, 272-73, 114 S. Ct. 807, 812, 127 L. Ed. 2d 114 (1994) (citing to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (holding the Fourth Amendment's exclusionary rule was applicable to the States); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (holding the Fifth Amendment's privilege against self-incrimination was applicable to the States); Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding the Double Jeopardy Clause of the Fifth

Amendment was applicable to the States).  Therefore, Defendant is entitled to summary judgment as to Plaintiff's Fifth Amendment due process claim because the Defendant is not a federal official.

Considering that Plaintiff is pro se in this action, the due process claim will be deemed to have also been raised under the Fourteenth Amendment of the Constitution.  Nevertheless, even with that liberal construction, Plaintiff's due process claim still fails.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  A § 1983 action is an appropriate avenue to challenge an alleged violation of procedural due process by a state actor.  Maddox v. Stephens, 727 F.3d 1109, 1118 (11th Cir. 2013) (cited in Crider v. Williams, No. 21-13797, 2022 WL 3867541, at *5 (11th Cir. Aug. 30, 2022)).

 "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally [ ] inadequate process."  Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (quoted in J.R. v. Hansen, 803 F.3d 1315, 1320 (11th Cir. 2015)).  More recently, the United States Supreme Court

simplified a procedural due process claim to two elements, both of which are subsumed in the Eleventh Circuit's standard: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236, 143 S. Ct. 955, 961, 215 L. Ed. 2d 218 (2023).

Defendant Domico argues that Plaintiff has not demonstrated the deprivation of a constitutionally protected liberty or property interest. ECF No. 59 at 7. Defendant says that Plaintiff does not have a protected "liberty interest in unlimited, unconditional physical access to the Gainesville Social Security office . . . ." *Id.* In response, Plaintiff contends that he has a right under the First Amendment to "gather information about what public officials do on public property, and specifically, a right to record matters of public interest." Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000).

Plaintiff's response overlooks the fact that First Amendment rights are not absolute. Elrod v. Burns, 427 U.S. 347, 360, 96 S. Ct. 2673, 2683, 49 L. Ed. 2d 547 (1976). Restraints on those rights "are permitted for appropriate reasons," Elrod, 427 U.S. at 360, 96 S. Ct. at 2683, and the Eleventh Circuit recognized as much in Smith. There, the court agreed

with the plaintiffs that there was a First Amendment right, but explained that the right was "subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct."  212 F.3d at 1333; *see also* Crocker v. Beatty, 995 F.3d 1232, 1240 (11th Cir. 2021).[17]

In this case, the ability to photograph or videotape inside a Social Security Office is restricted by 41 C.F.R. 102-74.420.  Although Plaintiff has argued that "recording for news purposes" is "allowed" under 41 CFR 102-74.420, *see* ECF No. 63 at 3, the exhibit speaks for itself.  *See* Plaintiff's Ex. 5 (ECF No. 64 at 17).  That Rule provides:

> *Except where security regulations, rules, orders, or directives apply* or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of—

_____

[17] Because this case does not present a First Amendment challenge, there is no need to address whether the Social Security Office is traditional public forum, designated public forum, limited public forum or a nonpublic forum.  *See* Patrick v. McGuire, No. 8:24-CV-999-MSS- NHA, 2024 WL 4803217, at *5 (M.D. Fla. Nov. 15, 2024) (dismissing First Amendment claim of an "independent journalist and activist" who sought to record her visit in the Pasco County Tax Collector's Office and was trespassed when she violated the policy against video recording and refused to stop recording).  At any rate, the Middle District of Florida recently held in United States v. Gray, No. 6:23-MJ-2348-EJK, 2024 WL 5186880, at *3 (M.D. Fla. Dec. 20, 2024), that Social Security Administration offices are not traditional public forums, designated public forums, or even limited public forums.  The court held that SSA offices "are non-public forums where individuals can go to conduct business related to the SSA so that the SSA can 'manag[e] its internal operations.'"  Gray, 2024 WL 5186880, at *3 (quoting Int'l Soc'y for Krishna Consciousness v. Lee, 505 U.S. 672, 678 (1992)).

(a) Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;

(b) Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and

(c) Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes.

41 C.F.R. § 102-74.420 (*emphasis added*).  The Rule permits photographs except where other rules apply.  It is undisputed that posted rules at the Gainesville Social Security office prohibited Plaintiff from engaging in his desired conduct - video recording inside the building.  *See* Gray, 2024 WL 5186880, at *4 (holding that the restrictions of 41 C.F.R. 102-74.420 "are reasonable" in the context of SSA offices and did not violate the defendant's First Amendment rights").  Plaintiff admitted as much.

In addition, the Court notes that 41 C.F.R. § 102-74.385 provides: "Persons in and on [federal] property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals."  41 C.F.R. § 102-74.385 (cited in Gray, 2024 WL 5186880, at *3 (noting that 41 C.F.R. § 102-74.385 applies to "anyone on SSA property")).  Plaintiff knew

a sign was posted, and he was also directed to stop recording by the security officer, Mr. MacLean, who is clearly an authorized individual.

Plaintiff also attempted to rely on the Operational Readiness Order to argue that videotaping is "allowed" in the Social Security Office.  *See* Plaintiff's Ex. 4 (ECF No. 64 at 11-16).  Again, that exhibit speaks for itself.

It is true that page 2 of the Order states that "[p]hotography and videotaping the interior of federal facilities is allowed under the conditions" outlined in subsections (a) - (c).  *Id.* at 12.  Yet the end of that sentence clarifies "unless there are regulations, rules, orders, directives or a court order that prohibit it."  *Id.*  The very next sentence provides an example of a prohibition - "SSA has rules that prohibit photography and videotaping in its spaces."  *Id.* at 13.  Therefore, the Order on which Plaintiff relies does not support his argument but, instead, refutes it.  The Order states clearly that videotaping is not permitted in SSA facilities, and the undisputed evidence in this case reveals that the prohibition against photography or videotaping was "clearly posted" in accordance with the Order  *See* ECF No. 64 at 13. Plaintiff acknowledged within his own video that he understood it was posted, and his argument that the "security guard misinterpreted the posted law," must be rejected.  *See* ECF No. 63 at 4.

Accordingly, Plaintiff was not deprived of a constitutionally-protected liberty or property interest.  His right to videotape inside the Social Security facility was limited by a clearly posted, and reasonable, restriction.[18]  *See* Gray, 2024 WL 5186880, at *3 (finding that important "security and privacy reasons" justified the prohibition on filing inside an SSA office).  It is unlawful to video record inside an SSA office.  2024 WL 5186880, at *5. Indeed, several persons have been charged with federal crimes for filming inside Social Security Administration buildings without permission.  United States v. Moore, No. 2:22-PO-00289-KJN, 2023 WL 5487340, at *1 (E.D. Cal. Aug. 24, 2023) (defendant charged "with violating 41 C.F.R. § 102-74.385, conformity with signs and directions, a Class C misdemeanor and a petty offense"); United States v. Cordova, No. 23-CR-00453-NYW-1, 2024 WL 4494300, at *2 (D. Colo. Oct. 15, 2024) (defendant "charged via information with one violation of 41 C.F.R. § 102-74.385 and one violation of 41 C.F.R. § 102-74.420"); Gray, 2024 WL 5186880, at *1 (defendants "Joshua Joseph Gray and George Douglas Metz . . . were charged by

---

[18] The posted restriction is shown in Gray, 2024 WL 5186880, at *5, and was also visible in Defendant's video evidence.  *See* ECF No. 58-5.

Case No. 1:23cv60-MW-MAF

information with multiple counts of violating 41 C.F.R. §§ 102-74.385 and 102-74.420").

"The Supreme Court has long held that '[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." Greer v. Spock, 424 U.S. 828, 836, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (quotation marks omitted) (quoted in Crocker, 995 F.3d at 1243). There is no reason to treat federal property any differently than property owned by the State. *See* United States v. Hastings, 695 F.2d 1278 (11th Cir. 1983) (upholding the "absolute rules which prohibit televising, recording, photographing and broadcasting federal criminal trials," and concluding that the right of access to attend a trial is the right "to attend, listen, and report on the proceedings" but does not extend "to the right to televise, record, and broadcast trials").[19] Governmental ownership of a facility does not guarantee "the public absolute and unrestricted access for the purpose of exercising First Amendment liberties." Fernandes v. Limmer, 663 F.2d 619, 627 (5th Cir. 1981). Put simply, "[t]he First Amendment 'does not guarantee access to

---

[19] The court noted in Hastings that the federal rules at issue there resembled "time, place, and manner" restrictions. Hastings, 695 F.2d at 1282.

property just because it is owned by the government.'" <u>Bloedorn v. Grube</u>, 631 F.3d 1218, 1230 (11th Cir. 2011) (quoted in <u>Patrick</u>, 2024 WL 4803217, at *8).  Therefore, summary judgment should be entered in favor of Defendant Domico as to Plaintiff's due process claim because he did not suffer a deprivation of a constitutionally-protected liberty or property interest.

Additionally, the Court finds that Plaintiff was afforded due process. After receiving the trespass warning from Defendant Domico for the Gainesville Social Security Office, Plaintiff received a certified letter on April 18, 2022, from the Social Security Administration.  ECF No. 64 at 18 (Ex. 7).  Because of Plaintiff's actions on April 15th, Plaintiff was barred from entering <u>any</u> Social Security offices by the SSA.  However, Plaintiff was provided the ability to file an appeal within 60 days if he desired to challenge that trespass order.  He could also seek review of that order "every three years," beginning on April 17, 2025.  The evidence shows Plaintiff did not file a timely appeal and did not show good cause for filing his belated appeal.

While persons have "a constitutionally protected liberty interest to be in parks or on other city lands...that are open to the public generally," *see*

Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011), it is possible to forfeit that right "by trespass or other violation of law[.]"  Id. (citing Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) ("The Constitution does not confer the right to trespass on public lands.")) Patrick, 2024 WL 4803217, at *8 (concluding that plaintiff "forfeited her right to access the [Tax Collector's] Office when she failed to comply with the Office's policy" which prohibited videotaping without prior approval). Plaintiff forfeited his right by failing to cease recording when directed and by refusing to leave the premises.  He then also forfeited his due process by not filing a timely appeal.

## B.    Equal Protection Claim

Plaintiff also claimed the Defendant violated his "Fourteenth Amendment right, the equal protection clause, by denying plaintiff's right to conduct business with public official on public property."  ECF No. 28 at 8. The claim was not artfully asserted, but Plaintiff's motion for summary judgment clarifies that Plaintiff believes he "was denied equal protection of the law when Defendant Domico unlawfully initiated a trespass against Plaintiff despite acknowledging that no crime had been committed."  ECF No. 63 at 8.

"The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1 (quoted in <u>Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n</u>, 127 F.4th 1294, 1311 (11th Cir. 2025)).  "The Equal Protection Clause essentially directs 'that all persons similarly situated should be treated alike.'"  <u>Daniels</u>, 127 F.4th at 1311 (quoting <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing <u>Plyler v. Doe</u>, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)).  The deficiency with this claim is that Plaintiff has not shown that Defendant Domico treated him differently than anyone else.  Without such a showing, the equal protection claim fails and judgment should be entered in Defendant Domico's favor.  In fact, the posted warning signs prohibiting video recording on the premises suggests that Plaintiff's treatment was consistent with that directed toward other citizens visiting the SSA building.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Plaintiff's amended motion for summary judgment, ECF No. 63, be **DENIED**; that Defendant's motion for summary judgment, ECF No. 59, be **GRANTED**; and judgment be entered in Defendant's favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on May 16, 2025.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**